## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MAYA DEVINSKAYA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE CORPORATION INTERNATIONAL INC., SCI PENNSYLVANIA FUNERAL SERVICES INC., FOREST HILLS CEMETERY CORP., and SHALOM MEMORIAL PARK, INC, each doing business as "SHALOM MEMORIAL PARK,"<br><br>Defendants. | Civil Action No. |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1332(d), 28 U.S.C. § 1441, 28 U.S.C. § 1446(a), and 28 U.S.C. § 1453, Defendants Service Corporation International Inc. ("SCI"), and SCI Pennsylvania Funeral Services Inc. ("SCI Pennsylvania"), doing business as Forest Hills Cemetery Corp. and Shalom Memorial Park, Inc. (collectively, the "Defendants"), through their counsel, hereby file this Notice of Removal of this action from the Philadelphia County Court of Common Pleas, No. 001110, to the United States District Court for the Eastern District of Pennsylvania and state as follows:

1.      Plaintiff Maya Devninskaya ("Plaintiff"), individually and on behalf of those similarly situated, originally commenced this putative class action by filing a complaint against Defendants in the Philadelphia County Court of Common Pleas on or about May 12, 2014, where it is presently captioned as <u>Devinskaya v. Service Corporation International Inc.</u>, et al., No. 001110 (the "Complaint").  No further proceedings before the state court have occurred.

2.     Pursuant to 28 U.S.C. § 1446(a), a copy of the Complaint, the only process, pleading, or order received by Defendants in this action, is attached hereto as **Exhibit A**.

3.     Defendants first received a copy of the Complaint from Plaintiffs on May 27, 2014. Therefore, this removal is timely pursuant to 28 U.S.C. § 1446(b) because it has been filed within 30 days after Defendants received the Complaint.

4.     Defendants remove this action based on this Court's original jurisdiction under 28 U.S.C. § 1332(d).   Specifically, the putative class is alleged to have more than 100 class members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000.

5.     As alleged in the Complaint, Plaintiff brings this action as a class action pursuant to Rule 1701, et seq., of the Pennsylvania Rules of Civil Procedure on behalf of herself and all members of the putative class. See **Exhibit A**, Complaint, ¶94.

6.     As alleged in the Complaint, Plaintiff is a resident of Philadelphia, Pennsylvania. See **Exhibit A**, Complaint, ¶16.

7.     As alleged in the Complaint, SCI is a Texas Corporation with its principal place of business located at 1929 Allen Parkway, Houston, Texas.   See **Exhibit A**, Complaint, ¶17. SCI is alleged to have "created the polices alleged herein and directed its subsidiaries . . . to carry out these polices as part of a common course of conduct relating to the sale of burial plots and treatment of graves at Shalom Memorial Park." Id.   As such, minimal diversity exists pursuant to 28 U.S.C. § 1332(d).

8.     Plaintiff's Complaint further alleges that the proposed class is comprised "of at least 1,000 persons." See **Exhibit A**, Complaint, ¶16.

9.     The amount "in controversy" in Plaintiff's Complaint exceeds the $5,000,000 jurisdictional amount required by 28 U.S.C. § 1332(d).  Specifically, Plaintiff is seeking, in part, disgorgement of the "cost[s] paid by Plaintiff and the class for burial plots and burial services." See **Exhibit A**, Complaint, ¶¶144-148.  These amounts far exceed the jurisdictional amount.

10.    Defendants' net sales average from the property sales alone at the subject cemetery from January 2009 through April 2014 are in excess of $8,000,000.  See **Exhibit B**, Certification of Michael J. Amato.

11.    In addition, Plaintiff's Complaint seeks an award of "class treble damages and/or a $100 per person statutory penalty," punitive damages, and attorneys' fees and costs. See **Exhibit A**, Complaint, pg. 26.

12.    Based on the foregoing, removal of this action is appropriate pursuant to 28 U.S.C. § 1332(d).

13.    Pursuant to 28 U.S.C. § 1446(d), written notice of this Notice of Removal of this action will be filed with the Philadelphia County Court of Common Pleas.

14.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal of this action is being served on counsel for Plaintiff.

WHEREFORE, Defendants respectfully request that Plaintiff's civil action be removed from the Philadelphia Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

**Saul Ewing LLP**

John F. Stoviak, Esq.
Nicholas J. Nastasi, Esq.
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7777
jstoviak@saul.com
nnastasi@saul.com

*Attorneys for Defendants*

Dated:  June 12, 2014

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Removal was served upon counsel for Plaintiff via Federal Express, addressed as follows:

DeNittis Osefchen, P.C.
Stephen P. DeNittis, Esq.
Shane T. Prince, Esq.
1500 JFK Blvd, Suite 200
Two Penn Center
Philadelphia, PA 19102

Bochetto & Lentz, P.C.
Gavin Lentz, Esq.
Bryan R. Lentz, Esq.
1524 Locust Street
Philadelphia, PA 19102

John F. Stoviak, Esq.
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7777
jstoviak@saul.com

*Attorneys for Defendants*

Dated:  June 12, 2014

# EXHIBIT A

**JURY OF TWELVE (12) IS DEMANDED**
**ASSESSMENT OF DAMAGES IS REQUIRED**

*Filed and Attested by*

**DeNITTIS OSEFCHEN, P.C.**
Stephen P. DeNittis, Esq. (ID No. 80080)
Shane T. Prince, Esq. (ID No. 89325)
1300 JFK Blvd, Suite 200
Two Penn Center
Philadelphia, PA 19102
215-564-1721

**BOCHETTO & LENTZ, P.C.**
Gavin Lentz, Esquire (ID No. 53609)
Bryan R. Lentz, Esquire (ID No. 71383)
1524 Locust Street
Philadelphia, PA 19102
215-735-2455

| | |
|---|---|
| MIYA DEVINSKAYA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SERVICE CORPORATION INTERNATIONAL INC., SCI PENNSYLVANIA FUNERAL SERVICES INC., FOREST HILLS CEMETERY CORP. and SHALOM MEMORIAL PARK, INC., each doing business as "SHALOM MEMORIAL PARK,"<br><br>Defendants | PHILADELPHIA COUNTY<br><br>COURT OF COMMON PLEAS<br><br>Civil Division<br><br>May 2014<br><br>NO.<br><br>**CLASS ACTION** |

## COMPLAINT IN CIVIL ACTION
### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claim set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may be entered against you by the court without further notice for any money claims in this complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyers Reference Service
Philadelphia County Bar Association
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

Le han demandado a usted en la corte. Si usted quiere defenderse de estas de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defenses o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notification. Ademas, la corte puede decidir a favor del demandante y requiere que usted compla con todas las provisions de esta demanda. Usted puede perder dinero o sus propiedades u ostros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyers Reference Service
Philadelphia County Bar Association
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

1

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2014        001110

E-Filing Number: 1405020418

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MAYA DEVINSKAYA | SERVICE CORPORATION INTERNATIONAL INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 8330 ALMA ST. PHILADELPHIA PA 19152 | 1929 ALLEN PARKWAY HOUSTON TX 77019 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | FOREST HILLS CEMETERY CORPORATION |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | PINE AND BYBERRY ROAD PHILADELPHIA PA 19116 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | SHALOM MEMORIAL PARK, INC. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1635 MARKET STREET PHILADELPHIA PA 19103 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 4 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal |
| | | [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less | [ ] Arbitration | [ ] Mass Tort | [ ] Commerce | [ ] Settlement |
| [X] More than $50,000.00 | [ ] Jury | [ ] Savings Action | [ ] Minor Court Appeal | [ ] Minors |
| | [ ] Non-Jury | [ ] Petition | [ ] Statutory Appeals | [ ] W/D/Survival |
| | [X] Other: CLASS ACTION | | | |

**CASE TYPE AND CODE**

C1 - CLASS ACTION

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER?   YES   NO |
|---|---|---|
| | **FILED PRO PROTHY** MAY 12 2014 K. EDWARDS | |

### TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>MAYA DEVINSKAYA</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| STEPHEN P. DENITTIS | 5 GREENTREE CENTRE SUITE 410 |
| **PHONE NUMBER**   (856)797-9951   **FAX NUMBER**   (856)797-9978 | 525 ROUTE 73 NORTH MARLTON NJ 08053 |
| **SUPREME COURT IDENTIFICATION NO.**   80080 | **E-MAIL ADDRESS**   sdenittis@denittislaw.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY**   *STEPHEN DENITTIS* | **DATE SUBMITTED**   Monday, May 12, 2014, 12:02 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF DEFENDANTS:**

 1. SCI PENNSYLVANIA FUNERAL SERVICES, INC.
   1929 ALLEN PARKWAY
   HOUSTON TX 77019
 2. SHALOM MEMORIAL PARK, INC.
   1635 MARKET STREET
   PHILADELPHIA PA 19103
 3. FOREST HILLS CEMETERY CORPORATION
   PINE AND BYBERRY ROAD
   PHILADELPHIA PA 19116
 4. SERVICE CORPORATION INTERNATIONAL INC.
   1929 ALLEN PARKWAY
   HOUSTON TX 77019

JURY OF TWELVE (12) IS DEMANDED
ASSESSMENT OF DAMAGES IS REQUIRED

**DeNITTIS OSEFCHEN, P.C.**
Stephen P. DeNittis, Esq. (ID No. 80080)
Shane T. Prince, Esq. (ID No. 89325)
1500 JFK Blvd, Suite 200
Two Penn Center
Philadelphia, PA 19102
215-564-1721

**Bochetto & Lentz, P.C.**
Gavin Lentz, Esquire (ID No. 53609)
Bryan R. Lentz, Esquire (ID No. 71383)
1524 Locust Street
Philadelphia, PA 19102
215-735-2455

| | |
|---|---|
| MAIA DEVINSKAYA, on behalf of herself and all others similarly situated, | PHILADELPHIA COUNTY |
| Plaintiff, | COURT OF COMMON PLEAS |
| v. | Civil Division |
| SERVICE CORPORATION INTERNATIONAL INC., SCI PENNSYLVANIA FUNERAL SERVICES INC., FOREST HILLS CEMETERY CORPORATION, and SHALOM MEMORIAL PARK, INC., each doing business as "SHALOM MEMORIAL PARK," | May 2014<br><br>NO. |
| Defendants | CLASS ACTION COMPLAINT |

## INTRODUCTION

1.  This is a class action, brought under Pennsylvania law, on behalf of a class of purchasers of burial plots in "Shalom Memorial Park," and the family members of the deceased loved ones who are buried therein, who were the intended victims of the outrageous scheme and uniform course of unlawful conduct alleged herein.

2.  Defendants collectively own and operate "Shalom Memorial Park," a Jewish cemetery located in Philadelphia, Pennsylvania, where Defendants sell burial plots and burial services therein.

3.  As set forth more fully herein, in operating Shalom Memorial Park, Defendants

have engaged in a long-standing policy and uniform course of conduct consisting of unlawful acts and omissions in the sale of burial plots to class members, as well as deceptive conduct in Defendants' subsequent performance with regard to those plots after sale.

4.    This uniform course of conduct was the result of intentional and knowing actions and omissions by Defendants, as Defendants tried to increase their profits by knowingly "overselling" grave plots in Shalom Memorial Park. In other words, Defendants engage in a policy of selling more burial plots in Shalom Memorial Park than can physically be derived from the finite amount of land available to place graves.

5.    At all times relevant hereto, Defendants have been fully aware that the inevitable result of such a policy of "overselling" plots is that the boundaries of the "plots" sold by Defendants are regularly penetrated and encroached upon by Defendants, as Defendants attempt to squeeze more and more bodies into that finite amount of space.

6.    This uniform course of conduct consists of a series of related acts and omissions by Defendants, under which Defendants:

    a.   Knowingly sold the same grave plots to multiple purchasers and/or knowingly sold grave plots to different purchasers where portions of the plots overlapped;

    b.   Knowingly pursued a policy of "encroachment," under which bodies in what were represented by Defendants to be separate grave plots were intentionally placed by Defendants so close together that the bodies actually overlapped, touched or very nearly touched, one another;

    c.   Intentionally sold plots to the class which Defendants knew were subject to this policy of "encroachment," without revealing the existence of this policy to the purchasers;

    d.   Knowingly buried bodies in plots which were already occupied by other bodies and/or placed bodies in a way such that the integrity of the plot was breached and bodies overlapped; and

3

e.  Intentionally sold plots to new purchasers which Defendants were aware were already occupied by a body, or where Defendants knew bodies would overlap, without revealing such occupancy to the new purchaser.

7.  These actions and omissions by Defendants are not unfortunate accidents nor innocent mistakes.

8.  Indeed, according to former employees of Defendants, Defendants actively monitor how often family members visit a grave site, so that Defendants can target occupied, existing graves which are seldom or never visited.

9.  The purpose of this monitoring is so Defendants will know which graves are "safe" to double-sell the plot or encroach upon.

10.  This is not the first time Defendants have been caught pursuing such policies.

11.  In 2001, Defendant SCI was sued in a class action in  Broward County, Florida in the matter of Joan Light v. SCI Funeral Services, 17th Judicial Circuit, in and for Broward County, Florida, Case No. 01-21376 08, for engaging in deceptive practices almost identical to those alleged herein.  SCI eventually paid $65 million in punitive and compensatory damages to settle that matter. The Florida Attorney General also required that graves be separated and reorganized.

12.  In 2009, Defendant SCI was again sued in a class action in California entitled Sands v. SCI, Superior Court of the State of California, County of Los Angeles, Case No. BC421528, for engaging in practices almost identical to those alleged in the case at bar. Defendant SCI settled the Sands matter for $80 million.

13.  In 2010, an SCI-owned Jewish funeral home in Brookline, Massachusetts, was charged by the Massachusetts State Board of Registration with serious violations of state law and regulations in connection with an incident where a woman was buried in the wrong grave, then disinterred by SCI without a legal permit being obtained and reburied in another grave with the

Case ID: 140501110

woman's family not being notified or Jewish law regarding disinterment or re-burial being observed. SCI paid the largest fine in the history of the Massachusetts as a result of that conduct.

14. Despite having been repeatedly caught and punished for such misconduct in the past, Defendant SCI continues to knowingly engage in the exact same type of conduct in Shalom Memorial Park.

15. This action seeks redress for the class in the form of compensatory damages, statutory penalties of $100 per class member under 73 P.S. § 201-9.2(a), punitive damages and injunctive relief, which would include, inter alia, an order for injunctive relief, directing Defendants to cease the challenged practices, directing that an audit take place to ensure that the boundaries of each grave plot are respected, and creating a Court-monitored program to restore the integrity of each grave and remedy the conduct alleged herein.

## THE PARTIES

16. Plaintiff Maya Devinskaya is a 73 old widow who resides in Philadelphia, Pennsylvania. Mrs. Devinskaya is a member of the proposed class in that she purchased a burial plot in Shalom Memorial Park from Defendants in 2013 in which to bury her daughter. As alleged in greater detail herein, Plaintiff Devinskaya was subjected to the policies alleged herein.

17. Defendant Service Corporation International ("SCI") is a Texas Corporation with its principal place of business located at 1929 Allen Parkway, Houston, Texas. SCI regularly conducts business and markets its activities in the Commonwealth of Pennsylvania. Together with the other defendants, SCI owns and operates Shalom Memorial Park cemetery. SCI created the policies alleged herein and directed its subsidiaries, including SCI Pennsylvania Funeral Services, Inc., Forest Hills Cemetery Corporation and Shalom Memorial Park, Inc., as well as its

5

employees and agents, to carry out these policies as part of a common course of conduct relating to the sale of burial plots and treatment of graves at Shalom Memorial Park.

18. Defendant SCI Pennsylvania Funeral Services, Inc. is a wholly owned subsidiary of Defendant SCI, and has its principal place of business located at 1929 Allen Parkway, Houston, Texas. Along with the other defendants, SCI Pennsylvania Funeral Services, Inc. owns and operates the Shalom Memorial Park cemetery. According to the records of the Pennsylvania Department of State, SCI Pennsylvania Funeral Services, Inc. is one of the registered owners of the fictitious business name "Shalom Memorial Park." SCI Pennsylvania Funeral Services, Inc. followed the directives of its parent, Defendant SCI, and implemented the policies alleged herein as part of a common course of conduct relating to the sale of burial plots and treatment of graves at Shalom Memorial Park.

19. Defendant Forest Hill Cemetery Corporation is a wholly owned subsidiary of Defendant SCI, and has its principal place of business located at Pine Road and Byberry Road, PO Box 11539, Philadelphia, Pennsylvania 19116. Along with the other defendants, Forest Hill Cemetery Corporation owns and operates the Shalom Memorial Park cemetery. According to the records of the Pennsylvania Department of State, Forest Hill Cemetery Corporation is one of the registered owners of the fictitious business name "Shalom Memorial Park." Forest Hill Cemetery Corporation followed the directives of its parent, Defendant SCI, and implemented the policies alleged herein as part of a common course of conduct relating to the sale of burial plots and treatment of graves at Shalom Memorial Park

20. Defendant Shalom Memorial Park, Inc. is a Pennsylvania corporation with a registered address of 1635 Market Street, Philadelphia, Pennsylvania, 19103. Along with the other defendants, Shalom Memorial Park, Inc. owns and operates the Shalom Memorial Park

6

cemetery. Shalom Memorial Park, Inc. followed the directives of its parent, Defendant SCI, and implemented the policies alleged herein as part of a common course of conduct relating to the sale of burial plots and treatment of graves at Shalom Memorial Park.

21. After reasonable investigation, Plaintiff avers that each of the Defendants acted as the agent, instrumentality and alter ego of the others, with a unity of purpose designed to increase profits based on the sale of burial plots at the Shalom Memorial Park under the policies alleged herein.

22. At all relevant times, Defendant SCI designed, drafted and implemented the policies and procedures used at Shalom Memorial Park, including the policies alleged herein. Defendant SCI mandated training for employees at Shalom Memorial Park. The contents of such training was created by and emanated from Defendant SCI. Defendant SCI also performed audits on Shalom Memorial Park.

23. Each Defendant participated in the policies alleged herein, rendering each such Defendant jointly and severally liable for the conduct alleged herein.

24. Each Defendant held itself out to Plaintiff and the world using the fictitious business name "Shalom Memorial Park," making it impossible for Plaintiffs to further differentiate between the actions of the specific Defendants at this time without discovery. Accordingly, all Defendants are henceforth collectively referred to as "Shalom Memorial Park" and/or "Defendants."

## JURISDICTION AND VENUE

25. This matter is properly venued in Philadelphia County in that Plaintiff purchased a burial plot for her daughter Ella from Defendants in the Shalom Memorial Park in Philadelphia, Pennsylvania and Plaintiff resides in Philadelphia, Pennsylvania.

Case ID: 140501110

## FACTS GIVING RISE TO THE CAUSES OF ACTION

26. Defendant SCI is a publically traded company which describes itself as **"North America's largest single provider of funeral, cremation and cemetery services."**

27. SCI operates more than 400 cemeteries in 43 states, including over 40 in the Commonwealth of Pennsylvania. Among these is Shalom Memorial Park, a Jewish cemetery in Philadelphia, Pennsylvania.

28. As claimed by SCI on its own website:

> **"Service Corporation International is dedicated to compassionately supporting families at difficult times, celebrating the significance of lives that have been lived, and preserving memories that transcend generations, with dignity and honor."**

29. As is clear from the series of lawsuits and criminal investigations by law enforcement officials in various states over the last decade, Defendant SCI operates the cemeteries it owns in ways that make this statement grossly and tragically inaccurate.

30. In 2001, SCI was sued in a class action in Florida for its operation of the Memorial Gardens cemetery near Fort Lauderdale, Florida, in an action captioned Joan Light v. SCI Funeral Services, 17th Judicial Circuit, in and for Broward County, Florida, Case No. 01-21376 08.

31. As alleged in the Light matter, SCI had oversold the cemetery, so bodies were buried too close together, causing the graves to "encroach" on one another; in many cases overlapping each other.

32. In an effort to hide this fact, SCI pursued a policy of secret exhumation, in which bodies were exhumed and re-buried, without notice to authorities or family members.

33. These allegations were particularly appalling to the Jewish cemetery's more

Case ID: 140501110

religiously observant customers, since traditional Jewish law requires bodies to be buried intact and prohibits disturbing the dead.

34. Moreover, in cases where exhumation and re-burial is necessary, Jewish law requires a religious service be performed prior to re-internment; something which could not be done owing to SCI's policy of failing to notify family members that their loved one was being moved.

35. SCI reached a $14 million agreement with the Florida Attorney General's Office in 2003 that required SCI to repair plots and reorganize the cemeteries to ensure all graves were properly marked and the grounds could accommodate all plots sold.

36. SCI also settled a separate class-action lawsuit in Florida on behalf of 350 families for another $100 million.

37. In 2009, SCI was again sued in a class action relating to its operation of a Jewish cemetery in Mission Hills, California, in an action captioned Sands v. SCI, Superior Court of the State of California, County of Los Angeles, Case No. BC421528.

38. Again, SCI was alleged to have "oversold" the cemetery, and to have engaged in a systematic policy of destroying or moving older graves in order to make room for new ones, without notifying authorities or family members.

39. After the California Supreme Court affirmed  certification of a class action, SCI eventually settled Sands for $800 million.

40. In 2010, an SCI-owned Jewish funeral home in Brookline, Massachusetts was charged by the Massachusetts State Board of Registration with serious violations of state law and regulations in connection with an incident where a woman was buried in the wrong grave, then disinterred without a legal permit being obtained and reburied in the correct grave, with the woman's family not being notified of the mistake or the corrective procedure. As a result, in

9

Case ID: 140501110

December 2011, the State Board announced a Consent Agreement and levied the biggest fine in its history against SCI.

41. Unfortunately, neither these prior incidents, nor the penalties and costs imposed as a result of these incidents have caused Defendants to live up to their promise to consumers of treating the deceased with "dignity and honor."

42. Rather, the same policies and course of conduct present in these prior incidents exist at Shalom Memorial Park, a Jewish cemetery owned and operated by Defendants in Philadelphia, Pennsylvania.

43. Specifically, as in these prior incidents, Defendants have "oversold" Shalom Memorial Park, pursuing a conscious and knowing policy of selling more burial plots than the amount of land available for burial can physically accommodate.

44. As in these prior incidents, this policy has led Defendants to try to squeeze in new burials in areas which are already saturated with existing graves, with the inevitable and foreseeable result that Defendants encroach on existing graves, violating the boundaries of plots that have already been sold and are occupied.

45. This uniform course of conduct consists of a series of related acts and omissions by Defendants, under which Defendants:

    a. Knowingly sold more burial plots than Defendants had land available to actually place graves without overlap;

    b. Knowingly pursued a policy of "encroachment," under which bodies in what were represented to be separate grave plots were intentionally placed by Defendants so close together that the bodies actually overlapped, touched or very nearly touched, one another;

    c. Intentionally sold plots to the class which Defendants knew were subject to this policy of "encroachment," without revealing the existence of this policy to the purchasers;

Case ID: 140501110

    d.  Knowingly buried bodies in plots which were already occupied by other bodies or in which two bodies partially overlapped; and

    e.  Intentionally sold plots to new purchasers which Defendants were aware were already occupied by a body, or where two bodies partially overlapped, without revealing such occupancy to the new purchaser.

46. These events cannot accurately be described as accidents.

47. Rather, they are the logical and inevitable outcome of Defendants' knowing and deliberate policy of selling more burial plots than the available land will accommodate.

48. Indeed, employees of Defendant SCI have reported that there is a conscious and deliberate policy at Shalom Memorial Park, in which graves are watched by Defendants to see which ones are seldom or never visited by loved ones. Those which Defendants deem are unlikely to be visited are then targeted by Defendants for "encroachment," with the idea being that no one is likely to complain if Defendants violate the boundaries of such existing older plots in order to squeeze in new graves.

49. For obvious reasons, Defendants do not reveal the existence of such policies to consumers when they purchase a grave plot at Shalom Memorial Park from Defendants.

50. Rather, Defendants take full advantage of the fact that Jewish law dictates a prompt funeral and burial, leaving purchasers of burial services at Shalom Memorial Park little time to shop around.

51. Consumers are told in the form documents provided to them by Defendants that they are purchasing a "plot" from Defendants, that all **"RIGHT, TITLE AND/OR EQUITY"** in the plot **"ARE BEING TRANSFERRED"** to that consumer by Defendants, and that Defendants are giving up all rights to the plot purchased through a quitclaim release which states:

"FOR $1.00 AND OTHER VALUABLE CONSIDERATION, RECEIPT OF WHICH IS HEREBY ACKNOWLEDGED, I/WE DO HEREBY QUITCLAIM, RELEASE AND TRANSFER ALL RIGHT, INTEREST, TITLE, USE, CLAIM, DEMAND AND EQUITY, IF ANY, WHATSOEVER, IN THE ABOVE DESCRIBED CEMETERY INTERNMENT RIGHTS AND/OR MERCHANDISE, AND IF APPLICABLE, AUTHORIZE OWNERSHIP DOCUMENT TO: [name of consumer]"

52. Nothing in these form documents advises consumers purchasing burial plots from Defendants that Defendants will breach the boundaries of that plot in order to squeeze in other graves. Nor are consumers notified of any of the facts set forth above relating to Defendants' policy of "encroachment" or any of the other related policies described herein.

53. What happened to the named plaintiff illustrates the deceptive nature of Defendants' policies and practices.

54. In 2013, Plaintiff Maya Devinskaya was a 73 year old widow living on Social Security who was still trying to recover from the loss of her beloved husband when she suffered one of the worst tragedies that can befall a parent.

55. Her 42 year old daughter, Ella, had died unexpectedly.

56. Neither Ella's estate nor Mrs. Devinskaya had the money to purchase a burial plot.

57. Defendants refused to finance the sale of a burial plot for Ella, citing a policy that Defendants only allow financing "pre-need" and will not finance a grave that is to be immediately occupied.

58. Pressed for time, in that Jewish law required a prompt burial for Ella, Plaintiff Devinskaya agreed to purchase a plot for her deceased daughter at Shalom Memorial Park by "trading" a plot she already owned outright in Shalom Memorial Park back to Defendants – a plot next to her late husband where she herself intended to be buried – in exchange for a new plot for Ella which was nearby.

12

59. Plaintiff Devinskaya gave up her ownership of that plot and received form documents from Defendants which stated that she was now the owner of Lot 538, grave 4, the place where Ella was then buried in June of 2013.

60. After Ella was buried, her husband, brother, mother and other family members visited frequently, including all Jewish holidays.

61. By winter, the family began to notice that when they walked around Ella's grave, the ground was sinking.

62. In late March of 2014, Plaintiff Devinskaya, along with Ella's husband and other family members, visited Ella's gravesite in order to measure the site for a gravestone.

63. The plan was to purchase a gravestone and then have relatives from all over the United States and the World to come to the cemetery for a ceremony to place the stone.

64. Relatives as far away as Ukraine and Australia purchased tickets to attend this ceremony in June 2014, the anniversary of Ella's death.

65. While they were at the gravesite in March of 2014, Plaintiff Devinskaya tripped in a spot where the soil was sinking.

66. Plaintiff Devinskaya and other family members went to the cemetery office to complain to Defendants' management.

67. They met with a male manager who then accompanied them to the gravesite.

68. While they were at the grave, they explained that they were there that day to measure for a headstone for Ella.

69. The manager began to claim that they were in the wrong spot, that Ella's head was not where Plaintiff Devinskaya and her family were measuring, but approximately a meter away.

70. Plaintiff Devinskaya knew this was not true.

Case ID: 140501110

71. At least one family member had visited Ella's grave almost every day since the funeral and they were certain of the correct location.

72. The manager continued to insist that Ella was in a different location.

73. When the family contradicted him, the manager then became agitated and appeared uncomfortable.

74. He left without the issue being resolved.

75. Approximately two weeks later, a man named Yakov contacted Plaintiff Devinskaya's family and said he had been hired by the family of an individual named Emil Khrizman to place a gravestone on Mr. Khrizman's grave at Shalom Memorial Park.

76. Yakov is in the business of selling and installing headstones and does a substantial amount of work at the Shalom Memorial Park.

77. Yakov said that when he went to the cemetery to place the headstone on Mr. Khrizman's grave, he found the site was occupied by Ella's photograph and flowers.

78. Yakov immediately brought this to the attention of the Khrizman family and they in turn immediately complained to Defendants' management.

79. Defendants' management then called Plaintiff Devinskaya at home and admitted that there was a problem with Ella's grave.

80. Defendants' management indicated that there was another family who wanted to put a monument on a deceased family member's gravesite and that there was not enough room to do so unless Ella was disinterred and moved.

81. Defendants' management demanded that Plaintiff Devinskaya come Shalom Memorial Park and sign a consent form allowing Defendants to disinter Ella's body and re-bury it in another location.

Case ID: 140501110

82. Plaintiff Devinskaya was devastated.

83. Ella's husband, who had already suffered from high blood pressure, had to immediately seek medical attention in the hospital due to the stress from this issue.

84. Subsequent investigation revealed the horrible truth.

85. Defendants had buried Ella in a burial plot which already contained the remains of Mr. Khrizman.

86. In other words, Defendants had sold Plaintiff Devinskaya a burial plot for Ella which overlapped with a plot Defendants had previously sold to the Khrizman family and then Defendants buried Ella in a manner in which the two bodies overlapped!

87. Defendants have obviously known this from the beginning.

88. But for Yakov Natanzon's observations, and the daily observations of Ella's family as to the location of Ella's grave, this fact would never have been made known to Plaintiff Devinskaya.

89. The foregoing facts are not isolated instances or accidents.

90. Rather, they are part of a knowing and intentional course of conduct by Defendants, the same type of conduct which gave rise to the other lawsuits and actions against Defendant SCI in other states, in which Defendants knowingly encroached on existing, already sold graves and place new bodies in such a way that bodies touch, nearly touch or actually overlap with each other.

91. Nor do Defendants warn consumers at the time of purchase of the fact that Defendants' policies of "double-selling" plots and "encroaching" on existing graves may result in bodies overlapping or touching and may require disinterment and re-burial.

92. As ghastly and egregious as these policies are, they are especially harmful in that

Case ID: 140501110

Shalom Memorial Park is a Jewish cemetery and Jewish law generally forbids disinterment and, even where it is allowed, requires a new religious ceremony to be performed upon re-burial.

93. Clearly, the class is in need of relief to end these policies and to remedy or mitigate the horrendous effects of these policies.

## CLASS ACTION ALLEGATIONS

94. **Class Definition:** Plaintiff brings this action as a class action pursuant to Rule 1701, *et seq.* of the Pennsylvania Rules of Civil Procedure on behalf of themselves and all members of the following proposed Class:

> **All customers who purchased burial plots in Shalom Memorial Park from Defendants and/or all persons who are legally vested under Pennsylvania law with the right to control the disposition of the remains of any deceased person buried in Shalom Memorial Park.**

95. Plaintiff reserves the right to modify the class description and the class based on the results of discovery.

96. **Rule 1702(1) Numerosity:** The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

97. The proposed class is composed of at least 1,000 persons.

98. **Rule 1702(2) Commonality:** Common questions of law and fact exist as to each class member.

99. All claims in this action arise exclusively from uniform policies and procedures of Defendants as outlined herein.

100. No violations alleged in this complaint are a result of any individualized oral communications or individualized interaction of any kind between class members and Defendants or anyone else.

101. There are common questions of law and fact affecting the rights of the class

members, including, inter alia, the following:

    a.  whether the uniform policies alleged herein exist;

    b.  whether those policies violate Pennsylvania law;

    c.  whether Defendants' failure to reveal the existence of these policies to purchasers of burial plots at the time of sale was an omission of material fact;

    d.  whether Defendants' conduct was a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. St. § 201–1 et seq;

    e.  whether Defendants' conduct was knowing, deliberate and/or willful;

    f.  whether Defendants have engaged in **"deceptive conduct which creates a likelihood of confusion or misunderstanding"** within the meaning of 73 P.S. § 201-2(4)(xxi); and

    g.  whether the class is entitled to injunctive relief in the form of an order:

        i)  enjoining Defendants from carrying out the policies alleged herein;

        ii)  requiring Defendants to send a court-approved form of notice to all class members advising them of the conduct alleged herein; and

        iii)  establishing a court-monitored audit to locate all instances where graves overlap or touch and a court-administered program to remedy the effects of the policies alleged herein.

102.  **Rule 1702(3) Typicality:** The claims of Plaintiff are typical of those of all class members.

103.  All claims of Plaintiff and the class arise from the same course of conduct, policies and procedures as outlined herein.

104.  All claims of Plaintiff and the class are based on the exact same legal theories.

105.  **Rule 1702(4) Adequacy of Class Representation:** Plaintiff will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709.

106.  Plaintiff is a member of the class she seeks to represent.

107.  Plaintiff has no interest antagonistic to, or in conflict with, the class.

Case ID: 140501110

108. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent herself and the class.

109. **Rule 1702(5)**: A class action would provide a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

110. **Rule 1708**: A class action is a fair and efficient method of adjudicating the controversy.

111. Common questions of law or fact predominate over any question affecting only individual members.

112. The prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would confront Defendants with incompatible standards of conduct.

113. Adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

114. To Plaintiff's knowledge, no other litigation has already commenced raising issues regarding the operation of Shalom Memorial Park. Indeed, one of the primary purposes of this suit is to provide notice of the unlawful conduct to class members, because Defendants have failed to provide such notice.

115. This particular forum is appropriate for the litigation of the claims of the entire class since the action raises claims exclusively under Pennsylvania law, Shalom Memorial Park is located in Philadelphia, Plaintiff resides in Philadelphia and Defendants conduct business in Philadelphia.

116. The expenses of litigation of separate claims by individual class members would be

high compared to the potential recovery of each individual class members.

117.  Thus, the absence of class certification would spell the death knell of any litigation over the misconduct alleged herein.

118.  The size of the class is believed to be less than 5,000 and the names of such persons are contained in the books and records of Defendants.

119.  Thus, there are no difficulties which are likely to be encountered in identifying the class members or in the management of the action as a class action.

120.  **Rule 1709:** The attorneys for the representative party are highly experienced in class actions and will adequately represent the interests of the class.

121.  Plaintiff's attorneys have participated in over 125 class actions and have been appointed by courts to serve as sole class counsel or class co-counsel in those certified class actions.

122.  Plaintiff has no conflict of interest with other class members.

123.  Plaintiff seeks the same relief for herself as for every other class member.

124.  Plaintiff has or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

## COUNT I

### Pennsylvania Unfair Trade Practices and Consumer Protection Law
### 73 Pa. Cons.St. § 201-1 et. seq.

125.  Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

126.  This action does not raise any claims of common law fraud.

127.  Rather, the claims in this count arise exclusively against Defendants under the UTPCPL.

19

128. "The purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa.Super.1999).

129. It is well-established that, in order to carry out that purpose, the UTPCPL must be liberally construed. See Chiles v. Ameriquest Mortg. Co., 551 F.Supp.2d 393, 398 (E.D.Pa.2008) ("The UTPCPL must be construed liberally."); Pirozzi v. Penske Olds-Cadillac-GMC, Inc., 413 Pa.Super. 308, 605 A.2d 373, 376, appeal denied, 532 Pa. 665, 616 A.2d 985 (1992) ("our supreme court held that the UTPCPL is to be liberally construed in order to effect its purpose.")

130. In order to prevail under the UTPCPL, a plaintiff must prove the transaction between plaintiff and defendant constituted "trade or commerce" within the meaning of the UTPCPL and that the defendant was engaged in unfair or deceptive acts or practices.

131. The conduct alleged herein clearly took place during "trade and commerce" within the meaning of the UTPCPL in that Defendants are selling burial plots and burial services to the public.

132. The conduct alleged herein constitutes a deceptive practice.

133. The UTPCPL 73 P.S. § 201-2(4)(xxi) defines unfair or deceptive acts or practices, inter alia, as any: "deceptive conduct which creates a likelihood of confusion or misunderstanding."

134. Prior to 1996, 73 P.S. § 201-2(4)(xxi) required that a defendant engage in the equivalent of common law fraud. See Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003).

135. In 1996, however, UTPCPL 73 P.S. § 201-2(4)(xxi) was amended to add the word

Case ID: 140501110

"deceptive conduct" as an alternative to "fraud" in describing the practices prohibited by this section. See Grimes v. Enter. Leasing Co. of Phila., LLC, 66 A.3d 330, 337 at n.4 (Pa. Super. Ct. 2013)(holding that reliance was not an element of a claim under the UTPCPL for a deceptive conduct "catchall" violation); Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super.2012) (holding that the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct); Commonwealth of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa.Commw.2003) (a plaintiff who alleges deceptive conduct to proceed without proving all of the elements of common law fraud); Flores v. Shapiro & Kreisman, 246 F.Supp.2d 427, 432 (E.D.Pa.2002):

> **"by adding a prohibition on 'deceptive' conduct, the 1996 amendment to the CPL eliminated the need to plead all of the elements of common law fraud in actions under the CPL. Under general principles of statutory interpretation, no word should be rendered redundant. The new word "deceptive" in the statute, therefore, must have been intended to cover conduct other than fraud."**

136.   Numerous cases have held that, after 1996, 73 P.S. § 201-2(4)(xxi) does not require actual fraud or reliance, including several recent Superior Court opinions. See Grimes v. Enter. Leasing Co. of Phila., LLC, 66 A.3d 330, 337 at n.4 (Pa. Super. Ct. 2013), holding that reliance was not an element of a claim under the UTPCPL for a deceptive conduct "catchall" violation stating:

> **"As this Court recently held in Bennett, when a plaintiff alleges a claim under the UTPCPL catchall provision under the theory of deceptive conduct, the plaintiff need not prove the elements of common law fraud, including 'induc[ment of] justifiable reliance ....' Bennett, supra at 152 n.5, 154-155. Therefore, to the extent that Grimes alleges Enterprise's conduct was deceptive, as opposed to fraudulent, she need not allege justifiable reliance."(emphasis added)**

Case ID: 140501110

See also Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa.Super.2012) (holding that the amendment to the catch-all provision that added the language "or deceptive conduct" changed the requirement from proving actual fraud to merely proving deceptive conduct).

137. As alleged herein, Defendants have engaged in deceptive conduct which creates a likelihood of confusion or misunderstanding.

138. The practices of Defendants as alleged herein are clearly deceptive and, indeed, are outrageous and shocking.

139. Such conduct is also based on, inter alia, material nondisclosures and material omissions of facts known by Defendants.

140. At no point in the process of selling burial plots do Defendants inform consumers in any fashion of the following material facts of which Defendants were aware:

    a. That Defendants employ a policy of "double selling" the same grave plot to multiple purchasers;

    b. That Defendants have sold more grave plots in Shalom Memorial Park than there is physical space to accommodate such graves without overlap;

    c. That Defendants are pursuing a policy of "encroachment" as described herein;

    d. That Defendants' policies result in bodies touching or overlapping; and

    e. That Defendants' policies may require disinterment and re-burial of loved ones.

141. Plaintiff and the class reasonably and justifiably expected that Defendants would not engage in the activities outlined above.

142. It is submitted that the Court may presume as a matter of law that no rational

Case ID: 140501110

consumer would purchase a grave plot from Defendants if they were made aware of the omitted facts outlined above.  See Markocki v. Old Republic Nat'l Title Ins. Co., 254 F.R.D. 242, 251 (E.D. Pa. 2008) (in certifying UTPCPL claims of a class that was overcharged for title insurance, concluding that **"the proposed class is entitled to a presumption of class-wide reliance"** when defendant's **"material nondisclosure [was] part of a common course of conduct"** and plaintiff had asserted that **"every consumer reasonably, and justifiably, expects the title insurer ... to charge the rate required by ... Pennsylvania law"**).

143.  As a proximate result of Defendants' conduct, Plaintiff and the class have suffered an ascertainable loss of money and property.

## COUNT II

### Unjust Enrichment/Disgorgement

144.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

145.  Alternatively, by the acts alleged herein, Defendants received a benefit from Plaintiff and the class, in the form of the cost paid by Plaintiff and the class for burial plots and burial services.

146.  The retention of that benefit by Defendants would be unjust because of the circumstances described herein.

147.  By the facts alleged herein, equity demands that Defendants disgorge themselves of this benefit and that the benefit be returned to Plaintiff and the class.

148.  Thus, as an alternative theory, Plaintiff brings this claim of unjust enrichment/disgorgement.

Case ID: 140501110

## COUNT III

### Breach of Contract

149.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

150.  The form documents provided to Plaintiff and the class at the time they purchased burial plots from Defendants expressly stated that such purchasers were the full, lawful and exclusive owners of such burial plots.

151.  Defendants, by the acts alleged herein, have breached those contracts.

152.  Moreover, every contract contains within it an implied covenant of good faith and fair dealing.

153.  By the acts alleged herein, Defendants have breached that covenant of good faith and fair dealing in the most outrageous way imaginable.

154.  As a result of that breach, Plaintiff and the class have suffered damages.

## COUNT IV

### TRESPASS

155.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

156.  By the acts set forth herein, Defendants have committed volitional acts of intrusion on property owned by Plaintiff and the class; i.e. the grave plots sold to Plaintiff and the class.

157.  These acts of intrusion included breaching the boundaries of the burial plots sold to Plaintiff and the class by, inter alia, placing bodies or portions of bodies within the boundaries of the plots owned by Plaintiff and the class, and selling, or purporting to sell, all or a portion of plots already owned by Plaintiff and the class to other buyers.

158.  These intrusions were committed by Defendants without the permission of

Case ID: 140501110

Plaintiff and the class.

159.  Plaintiff was in possession of this land, and/or were entitled to possession, at the time these intrusions occurred.

160.  Defendants acted with the knowledge and the intent of intruding on property owned by Plaintiff and the class.

## COUNT V

## PRIVATE NUISANCE

161.  Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

162.  By the acts set forth herein, Plaintiff and the class owned and/or had legal control over certain property; i.e. the grave plots sold to Plaintiff and the class.

163.  By the acts set forth herein, Defendants created a condition or permitted a condition to exist that was indecent or offensive to the senses, and was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of that property.

164.  This condition interfered with the use or enjoyment of land owned by Plaintiff and the class.

165.  Plaintiff and the class did not consent to Defendants' conduct.

166.  An ordinary person would be reasonably annoyed or disturbed by Defendants' conduct.

167.  Plaintiff and the class were harmed by that conduct.

168.  Defendants' conduct was a substantial factor in causing that harm.

169.  The seriousness of the harm outweighs the public benefit of Defendants' conduct.

Case ID: 140501110

**WHEREFORE, Plaintiff asks this Court to:**

a.  Certify the case as a class action pursuant to Rule 1701, et. seq. of the Pennsylvania Rules of Civil Procedure;

b.  Enter an order for injunctive and declaratory relief, enjoining Defendants' policies as alleged herein, directing Defendants to send a court-approved form of notice to all class members advising them of these policies, and establishing a court-administered program to conduct an audit and mitigate the damage caused by these policies, with the Defendants being ordered to pay the costs associated with such a program;

c.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d.  Award punitive damages;

e.  Award Plaintiff reasonable attorneys' fees and costs;

f.  Award Plaintiff and the class treble damages and/or a $100 per person statutory penalty as provided by 73 P.S. § 201-9.2(a); and

g.  Grant such other and further legal and equitable relief as the Court deem just and equitable.

DENITTIS OSEFCHEN, P.C.

BY:

Stephen P. DeNittis, Esquire
Shane T. Prince, Esquire
DeNITTIS OSEFCHEN, P.C.
1500 JFK Blvd, Suite 200
Two Penn Center
Philadelphia, PA 19102

Dated: 5|12|14

Gavin Lentz, Esquire
Bryan R. Lentz, Esquire
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102

Attorneys for Plaintiffs

Case ID: 140501110

## <u>VERIFICATION</u>

I, Maya Devinskaya, hereby state:

1.   I am the Plaintiff in the within matter.

2.   I verify that the statements made in the foregoing complaint are true and correct to the best of my knowledge, information and belief.

3.   I understand that the statements in said complaint are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

_____
Maya Devinskaya

Case ID: 140501110

## VERIFICATION

I, Stephen P. DeNittis, hereby state:

1. I am the attorney for the Plaintiffs in the within matter.

2. I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

3. I understand that the statements in said Complaint are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Stephen P. DeNittis

Dated: 5|12|14

28

Case ID: 14050111(

## VERIFICATION

I, Shane T. Prince, hereby state:

4.   I am the attorney for the Plaintiffs in the within matter.

5.   I verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

6.   I understand that the statements in said Complaint are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____
Shane T. Prince

Dated:  5/12/14

29

Case ID: 140501110

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAYA DEVINSKAYA, on behalf of herself and all others similarly situated,<br><br>             Plaintiff,<br><br>     v.<br><br>SERVICE CORPORATION INTERNATIONAL INC., SCI PENNSYLVANIA FUNERAL SERVICES INC., FOREST HILLS CEMETERY CORP., and SHALOM MEMORIAL PARK, INC, each doing business as "SHALOM MEMORIAL PARK,"<br><br>             Defendants. | Civil Action No. |

## CERTIFICATION OF MICHAEL J. AMATO

I, MICHAEL J. AMATO, hereby certify as follows:

1.  I have been employed as the Finance Director for the entity which oversees the review of the monthly financial operating statements for subsidiaries of Defendant Service Corporation International which operate funeral homes and cemeteries in the market area which includes the Shalom/Forest Hills Cemetery that is the subject of the allegations in the Complaint.[1]  I have held this position since November 2003.  My current responsibilities include overseeing the review of the monthly operating statements for the funeral homes and cemetery locations within the New York Market's  designated territory.

---

[1] The entity's full name is New York Market Support Center ("New York Market").

2.  I directed the completion of a report which compiles all of the lot sales revenue from January 2009 through April 2014 for the Shalom/Forest Hills Cemetery.

3.  The total lot sales revenue for the Shalom/Forest Hills Cemetery from January 2009 through April 2014 exceeds $8,000,000.00.

4.  The total lot sales revenue reflects the fees that were paid by consumers to purchase the lots only for the relevant time period, and does not include any costs or fees for services or merchandise that were paid in connection with these purchases.

5.  This type of revenue report is part of the monthly financial reporting that is generated in the normal course of business and is prepared in accordance with generally accepted accounting principles.  This report relies on documents that are compiled and maintained in the normal course of New York Markets' business.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:  June 12, 2014

Michael J. Amato

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Maya Devinskaya, on behalf of herself and all other similarly situated | Service Corporation International, Inc., SCI Pennsylvania Funeral Services, Inc., Forest Hills Cemetery Corp., and Shalom Memorial Park, Inc., each doing business as "Shalom Memorial Park" |

| (b) County of Residence of First Listed Plaintiff   Philadelphia County, PA | County of Residence of First Listed Defendant   Harris County, TX |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c)  Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Stephen P. DeNittis, Esq.<br>DeNittis Osefchen, P.C.<br>1500 JFK Blvd, Suite 200, Philadelphia, PA  19102 | John F. Stoviak<br>Saul Ewing LLP<br>1500 Market Street, Philadelphia, PA  19102 |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(d)

Brief description of cause:
Putative class action regarding burial plots

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   ➤ 5,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
06/12/2014

SIGNATURE OF ATTORNEY OF RECORD
*John F. Stoviak*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Maya Devinskaya, 8330 Alma St., Philadelphia, Pa 19152

Address of Defendant: Service Corporation International, Inc. 1929 Allen Parkway, Houston, TX 77019

Place of Accident, Incident or Transaction: Philadelphia, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☑   No☐

Does this case involve multidistrict litigation possibilities?   Yes☐   No☑

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, John F. Stoviak , counsel of record do hereby certify:
   ☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
   ☐ Relief other than monetary damages is sought.

DATE: 6/12/14            _____            23471
                    Attorney-at-Law            Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/12/14            _____            23471
                    Attorney-at-Law            Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

CIVIL ACTION

*Maya Devinskaya, on behalf of herself, and all others similarly situated* v. *Service Corporation International, Inc., et al*

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.           ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (✓)

| 6/12/14 | *[signature]* | Defendants |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-972-1095 | 215-972-1921 | jstoriak@.saul.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02